# Richmond

ELCIE TOLBERT, ADMINISTRATRIX, &C. V. DONALD M.
GILLESPIE, AND C. M. GILLESPIE, PARTNERS IN
TRADE DOING BUSINESS UNDER THE STYLE AND
FIRM NAME OF COEBURN GROCERY
COMPANY, AND DAVID GROSS.

January 25, 1954.

Record No. 4142.

Present, All the Justices.

The opinion states the case.

*S. H. & George C. Sutherland,* for the plaintiff in error.

*Kiser, Vicars & Kiser* and *Campbell & Campbell,* for the defendants in error.

Whittle, J., delivered the opinion of the court.

Elcie Tolbert, administratrix of the estate of her husband, Clifford Tolbert, sued D. M. Gillespie and C. M. Gillespie, partners trading as Coeburn Grocery Company, and David Gross, for damages occasioned by the death of plaintiff's decedent in an automobile-truck collision. At the time of the accident Tolbert was driving his automobile and Gross was operating the Coeburn Grocery truck.

At the conclusion of the evidence the court sustained a motion to strike, and the jury necessarily returned a verdict for the defendants on which the court entered judgment. This ruling is before us for review.

The plaintiff claims that the court erred in striking the evidence for the reason that there was sufficient evidence to warrant the jury in finding Gross guilty of negligence which was the proximate cause of the collision, and that plaintiff's decedent was free from contributory negligence.

The assignment of error makes it necessary for us to consider the evidence. While no eye witness testified, it is agreed that the collision occurred on July 3, 1951, about 2:30 p. m., on a sharp curve on Highway 83, near Fremont, in Dickenson county, and that Tolbert's car was proceeding on the inside of a right-hand curve while the truck driven by Gross was proceeding in the opposite direction.

The only witness testifying as to the accident was State Trooper R. H. Wilson. He stated that he arrived at the scene approximately ten minutes after the accident happened; that no one was there when he arrived except David Gross; that an ambulance had taken Clifford Tolbert to the hospital;

that David Gross stated he was driving the truck going in the direction of Fremont and that Tolbert was going in the opposite direction; that the point of collision was on "a very sharp and dangerous curve, it had been elevated but not properly, in my opinion. The road (hard surface) * * * was 21 feet in width * * * with a three foot shoulder on Mr. Tolbert's side, and a wide shoulder on the truck's side * * * possibly 10 or 12 feet, and would graduate out farther"; that there was an embankment "straight up and down", a stone cliff on the inside of the curve (Tolbert's side); that on the outside of the curve (Gross' side) there was a fill extending down to the river; that the highway department had at one time marked the road into driving lanes by a white line but the line was very faint and he doubted if a person driving on the highway would have noticed the marking; that he heard Gross testify before the Trial Justice and "I believe he said he never saw the vehicle (Tolbert's car)" before the accident; that the bed of the truck was even with the wheels or extended over slightly, he could not tell which.

On cross examination the witness stated that the day was very hot; that the heat had drawn the tar to the top of the road; that for this reason one could track a car along there very easily; that there were no brake marks made by either vehicle prior to the collision; that had brakes been applied the road would have obviously been marked by the wheels; that the debris from the vehicles was in the center of the road; that the glass from the Tolbert car was right in the center of the highway; that the truck had not been damaged to the extent that any glass had been broken; that the photograph taken showed no white lines in the highway, and that the light was ample for a good picture; that there was "a tar mark, which was very easy to see because the tar had been drawn up to the surface"; that this mark was made by the wheels of the Tolbert car prior to the accident; that the mark started on Tolbert's side of the road and extended 27 feet, and from his observation it came flush to

the center of the highway; that when the dividing line had been placed in the road it was so placed as to leave 11 feet 1 inch in Tolbert's lane and 9 feet 11 inches in Gross' lane.

Plaintiff argues that as the highway department had at one time marked the driving lanes in the road, such markings established the lanes which should control in this instance. Even if this contention were sound it would not be determinative of the issue here presented, but section 46-222, Code of 1950, provides: "Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey" the regulation requiring vehicles to be driven in their righthand lane, as indicated by such line. The plaintiff's evidence shows that the lanes of traffic in this instance were not "clearly marked" and therefore the center of the 21-foot road became the dividing line for users of the highway under Code, § 46-223.

Plaintiff next contends that Gross' admission that he did not see the car before the accident occurred at least convicts him, as one of the defendants, of negligence, and throws upon him the burden of proving contributory negligence on the part of plaintiff's decedent. This statement of Gross', without the disclosure of surrounding circumstances, does not convict him of negligence. His failure to see the car may have been due to a number of good reasons; the speed of Tolbert's car may have been the cause, or the fact that the truck was on the side of the road next to the steep river bank which called for extraordinary care in negotiating the curve may have caused Gross not to see the car before the impact,—we cannot tell. In this connection, plaintiff admits in her brief that "the collision occurred where the road makes a very sharp and dangerous blind U-shaped curve, to the (Tolbert's) right." It was admitted in argument that under these circumstances neither driver had much time to see the oncoming vehicle. Certainly the bare statement attributed to Gross is not sufficient to show that his failure to see was a proximate cause of the collision. This is a burden the plaintiff must

bear. Under these circumstances such statement utterly fails to make a *prima facie* case against the defendants.

As was said by Justice Buchanan in *Guthrie* v. *Carter*, 190 Va. 354, 358, 57 S. E. (2d) 45, 46, 47:

"In such a case negligence cannot be presumed from the mere happening of the accident. The burden was on the plaintiff to prove that it was due to the negligence of the defendant as a proximate cause. What is proved must establish more than a probability of negligence. Inferences must be based on facts, not on presumptions. It was incumbent on the plaintiff to show why and how the accident happened. If that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover. *Chesapeake, etc. Ry Co.* v. *Heath*, 103 Va. 64, 48 S. E. 508; *Arnold* v. *Wood*, 173 Va. 18, 3 S. E. (2d) 374; *Toler* v. *Yellow Cab Co.*, 179 Va. 38, 18 S. E. (2d) 250; *Richter* v. *Seawell*, 183 Va. 379, 32 S. E. (2d) 62.

"Unless the plaintiff had made out a *prima facie* case there was no duty on the defendant to bring forward any evidence or to introduce any testimony to explain the accident or show how it happened. *Arnold* v. *Wood, supra; Darden* v. *Murphy*, 176 Va. 511, 11 S. E. (2d) 579."

Next the plaintiff argues that the debris and glass in the road show that the truck was being driven too close to the center of the highway. But here, too, we do not know the circumstances as to why the vehicle was being so driven. However, the negligence here charged to the truck driver applies with equal force to plaintiff's decedent. The plaintiff has failed to establish the cause of the collision and has utterly failed to show that Gross was guilty of negligence which was a proximate cause of the accident. All that the plaintiff has shown is that the accident happened in or near the center of the highway and that plaintiff's decedent was killed as a result thereof.

In *Arnold* v. *Wood*, 173 Va. 18, 24, 3 S. E. (2d) 374, 376, Justice Eggleston quoted with approval from *Chesapeake &*

*Ohio Ry. Co.* v. *Heath,* 103 Va. 64, 66, 48 S. E. 508, as follows:

" 'The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred —some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition, without a single known fact.' "

Upon the evidence presented, this case, at best, is one of concurring negligence. Here the collision occurred in broad daylight when the dangerous nature of the highway was clearly apparent to both drivers. The impact of the vehicles was at or near the center of the road. Every theory which the plaintiff advances to show negligence on the part of Gross applies with equal force to the decedent.

If the situation were reversed, and had Gross been killed, in a suit against Tolbert there could be no recovery even in the face of the testimony of the State Trooper that the tar marks made by the wheels of the Tolbert car before the collision (for some unexplained reason) left its side of the road (a place of safety) and extended 27 feet to the center of the highway, the point of impact. Yet, upon the reasoning of the plaintiff here, a recovery in favor of the truck driver against Tolbert would be equally as sound.

Plaintiff's final question is: "Even if the deceased had been negligent, should not the defendants have saved him?" This attempt to invoke the last clear chance doctrine was abandoned in oral argument and is clearly without merit. *Craighead* v. *Sellers,* 194 Va. 920, 923, 76 S. E. (2d) 212, 214.

For the reasons here expressed the judgment below is

*Affirmed.*

BUCHANAN and MILLER, JJ., concurring in result.

BUCHANAN, J., concurring in result:

I cannot agree that the evidence does not make a *prima facie* case of negligence against the driver of the truck. The accident happened in broad daylight. The hard surface of the road was 21 feet wide. In addition, there was on the truck's side a shoulder of dirt and gravel 10 to 12 feet wide. The truck was proceeding slightly upgrade. Its side of the road was elevated. The front of the Tolbert car was not damaged in the collision. The left front fender of the truck and the left front corner of its bed were dented. The impact on the Tolbert car was back of its left front wheel, continued along its left side and mashed in its left rear fender. There is a fair inference from these facts that the truck, with plenty of room on its side of the road, cut to the center of the road and into the Tolbert car, which was still on its side of the center and in plain view.

The driver of the truck was the only survivor of the accident. The only explanation he offered was that he did not see the Tolbert car. The only inference from that was that he was not looking. If he drove around this curve with his truck in the middle of the road and without looking to see what was coming to meet him, he was on the face of the matter clearly guilty of negligence. If there was some explanation he could have made to show that he was in fact not negligent, it was his obligation to make it—not ours to imagine excuses he might have made.

The trial judge thought the evidence showed negligence on the part of the driver of the truck, but that it also showed contributory negligence on the part of Tolbert, and struck out the plaintiff's evidence for that reason. I think that is

the correct view of the case. The evidence shows no more excuse for Tolbert's not seeing the truck than it does for the driver of the truck not to see Tolbert's car. Twenty-seven feet back of the point of impact the Tolbert car began veering toward the center of the road and it stayed on that course until it came to the center of the road and the point of collision. Tolbert, therefore, drove right toward the truck which was in plain view and without any reason for doing so, so far as the evidence discloses. That act was necessarily a contributing cause of the inevitable collision. Any excuse a jury might find for the act of either driver could be based only on guess or conjecture. Verdicts must rest on more solid ground.

MILLER, J., joins in this concurring opinion.